# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

February 23, 2018

**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**WARREN CURRY,**
**Claimant Below, Petitioner**

**vs.)    No.  17-0845** (BOR Appeal No. 2051855)
                (Claim No. 2015010644)

**RIO GROUP, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Warren Curry, by Mark Grigoraci, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Rio Group, Inc., by Steven Wellman, its attorney, filed a timely response.

Mr. Curry's claim was held compensable for a lumbar strain/sprain. The issue on appeal is whether a referral to a neurosurgeon for a consultation should be authorized as reasonable and necessary medical treatment. On March 3, 2016, the claims administrator denied a request for a referral to a neurosurgeon. The Office of Judges affirmed the decision in its February 6, 2017, Order. The Order was affirmed by the Board of Review on August 23, 2017. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Curry, a coal miner, was lifting seven foot scoop doors when he injured his left shoulder and low back on September 30, 2014. On October 7, 2014, he was treated in the emergency room at Williamson Memorial Hospital for complaints of low back pain. Thoracic x-rays showed mild degenerative changes with small endplate osteophytes at multiple levels. Lumbar x-rays showed loss of disc height at multiple levels with endplate osteophytes. Mr. Curry was diagnosed with a lumbar strain. Prior to the September 30, 2014, injury, Mr. Curry injured his low back at work in 1979, 1983, and 1986. The 1986 injury was the most serious as it required a two-week hospitalization.

On October 13, 2014, Mr. Curry sought treatment from his family physician, Brian Francis, M.D., for his shoulder and back. Dr. Francis diagnosed lumbar radiculopathy, prescribed Prednisone, and ordered physical therapy. A lumbar spine MRI showed degenerative disc disease throughout the spine, most prominent at L3-L4, with spinal canal stenosis and impingement onto the L4 nerve root with slight L4 nerve root enlargement. Dr. Francis continued to treat Mr. Curry for the low back symptoms. On October 27, 2014, Dr. Francis diagnosed Mr. Curry with spinal stenosis and lumbar radiculopathy. On December 22, 2014, the diagnoses changed to low back pain and chronic pain syndrome.

Paul Bachwitt, M.D., performed an independent medical evaluation on January 22, 2015, regarding a request for epidural steroid injections. Dr. Bachwitt noted that Mr. Curry's symptoms included aching, dull back pain that radiated into his right leg. A lumbar spine x-ray revealed degenerative changes at L3-L4 and L4-L5. Dr. Bachwitt diagnosed lumbar sprain/strain superimposed on pre-existing degenerative changes. He opined that the pre-existing degenerative changes of the lumbar spine may have been exacerbated by the September 30, 2014, work injury and recommended authorization of the epidural steroid injections.

Mr. Curry continued to treat with Dr. Francis for complaints of low back pain with radiation into the right leg. Dr. Francis continued to diagnose lumbar stenosis, chronic pain syndrome, low back pain, and/or lumbar radiculopathy On August 6, 2015, Dr. Bachwitt performed a follow-up independent medical evaluation regarding a request for EMG/NCV testing. Dr. Bachwitt diagnosed lumbar sprain/strain superimposed on pre-existing degenerative changes and a left shoulder sprain and recommended an EMG/NCV of the right lower extremity. On September 29, 2015, the NCV and EMG testing performed by Naveed Ahmed, M.D., was suggestive of mild, early right peroneal neuropathy. On November 13, 2015, Mr. Curry treated with Brendon Coughtry, M.D., who noted the EMG/NCV testing of the right lower extremity was essentially normal. He diagnosed neuralgia/neuritis; other intervertebral disc degeneration, lumbar region; other spondylosis with radiculopathy, lumbar region; and radiculopathy, lumbosacral region.

On January 26, 2016, Dr. Bachwitt issued a third report after performing a third evaluation of Mr. Curry. Dr. Bachwitt noted Mr. Curry had received the recommended epidural steroid injections. Based on the updated medical records regarding the injections and EMG/NCV testing, Dr. Bachwitt opined that there was no need for any additional treatment. In his opinion, Mr. Curry's simple sprain/strain should have resolved within two to three months after the September 30, 2014, injury. A February 2, 2016, lumbar spine MRI revealed multi-level degenerative changes, worse at L3-L4 and L5-S1.

Dr. Francis requested a referral to a neurosurgeon on February 3, 2016. On February 9, 2016, in an addendum to his report, Dr. Bachwitt opined that Mr. Curry's chronic low back pain documented in the medical records was not due to the work-related simple lumbar strain/sprain. Mr. Curry did not need a neurosurgical consultation because there was no clinical evidence of an operative disc lesion.

On March 3, 2016, the claims administrator denied Dr. Francis's request for a referral to a neurosurgeon based on Dr. Bachwitt's opinion. Dr. Bachwitt prepared a second addendum to his reports after having reviewed the February 2, 2016, lumbar spine MRI report. In Dr. Bachwitt's opinion, the disc bulges on the lumbar MRI were not significant. They were mostly due to degenerative changes that pre-existed the compensable injury. Dr. Bachwitt noted that Mr. Curry's lumbar spine range of motion was reasonable. He had a ninety degree straight leg raise, no muscle weakness, and symmetrical reflexes during his January 26, 2016, evaluation. Dr. Bachwitt opined that the documented chronic low back pain was not due to the compensable work injury.

Dr. Francis testified via deposition on August 5, 2016, that he had been an internal medicine physician for twenty years and had been Mr. Curry's physician since at least 2012. After the September 30, 2014, work injury, Dr. Francis diagnosed Mr. Curry with lumbar radiculopathy with protruding L3-L4 disc and spinal stenosis of the lumbar spine. In his opinion, the injury was more than just a simple sprain/strain of the lumbar spine. Mr. Curry continued to complain of pain in the right lower back that radiated to the right leg, which Dr. Francis attributed to a pinched nerve. Mr. Curry's injury was not the type of injury that would resolve in eight weeks. In Dr. Francis's opinion, it was reasonable and necessary for Mr. Curry to be evaluated by a neurosurgeon due to the two year history of radicular back pain. The degenerative changes seen on the MRIs preceded the injury. It is common for degenerative disc disease to become symptomatic whether there is an injury or not. Dr. Francis opined that lumbar radiculopathy should continue to be considered as a diagnosis even in the presence of normal EMG and NCV studies.

Marsha Lee Bailey, M.D., performed an independent medical evaluation on November 17, 2016. Mr. Curry reported constant low back pain that extended to his right buttock. Dr. Bailey noted Mr. Curry's lumbar range of motion was restricted due to pain. Dr. Bailey diagnosed chronic low back pain and radiculitis. She opined that the February 2, 2016, lumbar MRI showed a progression of Mr. Curry's degenerative disc disease. His complaints were not consistent with an L4 radiculopathy as lumbar radiculopathy is pain or paresthesias in a dermatomal distribution that is supported by physical findings. The lower extremity examination of Mr. Curry showed no neurologic deficit. Additionally, the diagnostic testing showed no evidence of radiculopathy. In Dr. Bailey's opinion, Mr. Curry sustained a lumbar sprain and strain on September 30, 2014. The current complaints were confounded by pre-existing and progressive degenerative spine disease. Dr. Bailey also believed that a portion of the pain originated from Mr. Curry's left hip. In her opinion, Mr. Curry did not need any additional medical treatment as the result of his injury.

On February 6, 2017, the Office of Judges affirmed the claims administrator's denial of the request for a referral to a neurosurgeon. It found the testimony of Dr. Francis was sincere, but it was apparent from the testimony that Dr. Francis was not aware of Mr. Curry's significant prior back injuries. Additionally, Drs. Bailey and Bachwitt opined that the conditions seen on the MRI were pre-existing degenerative changes. The degenerative conditions noted in the MRI reports would not be due to the work injury. The Office of Judges further found that even if the injury had exacerbated the pre-existing problems that would not make the disc bulges

3

compensable. Therefore, the Office of Judges determined that the neurosurgical consultation was not necessary treatment for the lumbosacral sprain/strain. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on August 23, 2017.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Mr. Curry had longstanding lumbar spine symptoms. The claim was compensable for a lumbar sprain/strain. The lumbar sprain/strain should have resolved within six to eight weeks of the injury. When Mr. Curry experienced ongoing symptoms, he received epidural steroid injections, underwent EMG/NCV testing, and had a repeat MRI. The objective testing revealed degenerative changes. The need for the neurosurgical referral was for the degenerative disc disease, not the work-related lumbar sprain/strain. Therefore, the Office of Judges' Order was properly affirmed.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: February 23, 2018**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

**DISSENTING:**
Justice Menis E. Ketchum

4